*Kelly & Merrill*, for C. A. Wikel, defendant in error.

---

## RAILWAY CROSSINGS OF HIGHWAYS UNDER THE NEW STATUTE.

[Circuit Court of Lucas County.]

THE CITY OF TOLEDO v. THE TOLEDO, ST. LOUIS & WESTERN RAILROAD COMPANY.

Decided, March 22, 1907.

*Eminent Domain—Acquirement by Railways of Right to Cross Streets and Highways—Jurisdiction of Probate and Common Pleas Courts with Reference Thereto—Crossings at Grade, Above Grade and Below Grade—Evidence—Error—Injunction—Appeal—97 O. L., 546, Construed.*

1. The jurisdiction of the probate court in the matter of condemnation proceedings brought by a railroad company for the purpose of acquiring the right to cross a street or highway with its tracks is confined to the question of the necessity of making the crossing and assessment of compensation therefor.

2. Whether the crossing shall be at grade, above grade, or below grade is a matter entirely within the jurisdiction of the common pleas; and where the railroad company has acquired the right to cross by proper proceedings in the probate court, the privilege so granted is without any reference to the character of the crossing with reference to grade.

3. In an action brought in the common pleas to enjoin the laying of a crossing at grade under a grant from the probate court, it is error to exclude testimony offered by the railroad company for the purpose of showing that the crossing in question falls within the exception provided in 97 O. L., 546.

4. Where the proposed crossing is by a spur-track leading to manufacturing establishments, commercial houses and certain docks, it falls within the exception as to tracks for increasing "yard facilities at terminal or other points," and the company has the right under the statute to cross at grade.

HAYNES, J.; PARKER, J., and WILDMAN, J., concur.

This case comes here by appeal and with it is also a case in error, entitled, *The Toledo, St. Louis & Western Railroad Company* v. *The City of Toledo*, growing out of the case first mentioned. It seems, from the history of the case, that the railroad company filed, in 1906, a petition in the probate court for the purpose of appropriating a right of way across Erie street at a point that was mentioned in the petition; that such proceedings were had that the court first entertained a hearing as to whether it was necessary or not, etc., according to the statute, and a finding was made in favor of the railroad company, and a jury was ordered and was subsequently impanneled, which assessed the damages to be paid by the railroad company in the sum of two hundred dollars, and an order was entered that the railroad company might enter upon the property appropriated and lay its track across the street, and thereupon the railroad company took steps to lay its track.

At this point the City of Toledo, by direction of the council of the city, interposed by the petition in question, setting up the facts in this appropriation proceeding, and averring that the railroad company was about to lay its track at grade across the street, and averring that under the statutes of the state of Ohio it was the duty of the railroad company to build an overhead bridge, and praying for an injunction restraining the company from crossing the street at grade, and for an order requiring them to build an overhead bridge. The petition sets out in substance the proceedings as they appear in the record, or largely so; that is the substance of the petition. The object and purpose of this petition is to compel the railroad company to go into the court of common pleas, under certain sections of the statutes that are mentioned, and obtain an order from the court of common pleas in regard to the crossing. The defendant answers, admitting many things set up in the petition which are matters of record, but among other things denies "that the track in respect of which it has appropriated the right to use and occupy a portion of Erie street aforesaid in the proceedings in the Lucas Probate Court above set forth, is an extension of its main line from its present terminus in the City

of Toledo, or a main track, and denies each and every other allegation in plaintiff's petition contained and not herein above specifically admitted. * * * On the contrary, defendant avers that the track, in respect of which it appropriated the right to use and occupy the above described portion of Erie street, is a switch or siding from its lines of railroad now constructed, to mills, factories and other manufacturing establishments, industrial plants and piers located on the east side of Erie street aforesaid, and is an additional track to increase its yard faculities at its present terminals."

As I have said, the object of this petition is to prevent the railroad crossing or laying its tracks across the street until it has conformed with a certain statute that was passed April 25, 1904, 97 O. L., 546, approved May 3, 1904. The first section provides:

"Except as in this act elsewhere provided, all crossings, hereafter constructed, whether of highways by railroads, or of railroads by highways, shall be above or below the grade thereof."

Section 2 provides:

"Every railroad company constructing a new line of railroad, under its charter powers, across a highway, shall construct the same above or below the grade of the highway, unless permitted in the manner hereinafter provided, to construct the same at grade and location of highways in order to avoid grade crosstained in its charter and the general laws, for altering the grade and location of highways in rder to avoid grade crossings."

Section 4 further provides, among other things:

"A petition shall be presented by the party desiring such construction (a crossing at grade) to the court of common pleas of the county within which said crossing is situated, upon ten days notice to the corporation owning said railroad or to such municipality or authority, describing the proposed construction and setting forth the reasons that are supposed to make the same necessary or desirable; and the court of common pleas shall thereupon have jurisdiction of the parties and the subject-matter of such petition, and may proceed, summarily or otherwise, and upon such notice as it shall deem sufficient, to examine

the matter, either by evidence, by reference to a master commissioner or otherwise; and, if satisfied that such construction is reasonably required to accommodate the public, or to avoid excessive expense, in view of the small amount of traffic on the highway or railroad, or in view of the difficulties of other methods of construction, or for other good and sufficient reasons, then it shall make an order or orders permitting such crossing at grade to be established.''

That is to say, in brief, that the statute provides that the railroad shall build an overhead track, unless the court of common pleas makes a finding that it is proper and desirable and for the public benefit that it may cross at grade.

But the first section, it will be observed, provides—''except as in this act elsewhere provided.'' Section 6 contains an exception:

''Nothing in this act shall prevent any railroad company from laying additional tracks at crossings previously existing, or from constructing switches, sidings and branch lines from their lines of railroad now or hereafter constructed to any mill, factory, or other manufacturing establishment, or other industrial plant, or any elevator, wharf or pier, or gravel, marl or clay bed, or any mine, or from laying additional track to increase their yard facilities at terminal or other points across public highways at the grade thereof, but such sign posts and signals shall be employed for the protection of such crossings as are by law prescribed for railroad crossings of public highways.''

The defendant avers that the track it is about to extend over Erie street comes within this exception, that it is a crossing at a terminal point, and is made to reach other buildings and factories for the purpose of facilitating the terminal facilities.

There was attached to this petition for condemnation or appropriation a map, a copy of which I hold. The original record was offered in evidence, and I simply refer to this because it is convenient; I have examined the original and this is a copy. Now, the map that was attached to the petition showed that what was originally a main line had come down around to the north of this crossing and had intersected, up-

proached, or touched Erie street at a point a considerable distance east of this point. It shows that there was a large number of side-tracks reaching out from that terminal and coming down to Erie street. It shows that the freight house is at that point adjoining on Kraus street, and that the office building of the company recently constructed is upon the same piece of property and adjoining Kraus street, and these tracks all terminate at Erie street. That lying beyond Erie street is property of manufacturing establishments and of the gas, light and coke company, and adjoining them is Swan creek, and the line of track they propose to extend comes around in a curve after it crosses Erie street and comes down alongside of the dock and near these factories. All that is part of the original record of the case.

The petition having been filed, an injunction was allowed. After that motions were interposed for the dissolution of the injunction and were heard. It appears from the case that upon a motion to dissolve the injunction the court of common pleas refused to hear any evidence whatever, but determined the case entirely upon the appropriation proceedings in the probate court, and refused to dissolve the injunction, and that was alleged as error, and a petition in error was filed for the purpose of reversing the court upon that interlocutory order. Afterwards the case came on and was heard upon its merits, and the court of common pleas in that case also refused to hear any evidence whatever and made an order based upon the appropriation proceedings. The case was then immediately appealed to this court.

Upon the hearing of the case in this court testimony was offered on behalf of the defendant, the railroad company, in regard to the condition of the railroad property at this point. The city, by its attorney, interposed an objection, and that matter was argued. We took the objection offered under advisement, and admitted the testimony subject to the objections, and stated that we would rule upon that when we came to decide the case.

It will be observed, as I stated before, that the controversy here is whether or not this railroad company—the condition of

its yard and tracks at this point—will bring it within the main section of the statute or whether it comes within the exception. The railroad company refused to make any application to the court of common pleas to secure any permission, because it said it was not required to do so; that its right under the exception was absolute; that it had a right to go forward and build its track without asking for this permission; and the object of the city is to restrain them from doing so until they comply with the statute as the city interprets it through its attorneys.

The appropriation proceeding is under Section 3283, and was passed many years ago.   The statute provides that:

"If it be necessary, in the location of any part of a railroad, to occupy any public road, street, alley, way, or ground of any kind, or any part thereof, the municipal or other corporation, or public officers or authorities, owning or having charge thereof, and the company, may agree upon the manner, terms and conditions upon which the same may be used or occupied; and if the parties be unable to agree thereon, and it be necessary, in the judgment of the directors of such company, to use or occupy such road, street, alley, way, or ground, such company may appropriate so much of the same as may be necessary for the purposes of its road, in the manner and upon the same terms as is provided for the appropriation of the property of individuals, but every company which lays a track upon any such street, alley, road or ground, shall be responsible for injuries done thereby to private or public property lying upon or near to such ground, which may be recovered by civil action brought by the owner, before the proper court, at any time within two years from the completion of such track."

The authority to cross this street is derived from that section of the statutes, or at least it is under that they can proceed and did proceed.   The Legislature has granted to the defendant company the right to cross this street, provided it does so under the provisions of this statute.   That is to say, they proceed as against individuals under Section 6420, which provides:

"On the day named in any summons first served, or publication first completed, the probate judge shall hear and determine the questions of the existence of the corporation, its right to make the appropriation, its inability to agree with the owner, and the necessity for the appropriation."

That matter comes up and is first heard before the probate court, and it determines whether the appropriation is necessary, and whether the proper steps have been taken to declare the desire of the corporation to make the appropriation. That matter underwent some discussion in the Supreme Court in certain cases that went up from this county (72 O. S., 368). The court is authorized to pass upon the question of necessity, and upon these other questions generally, for the purpose of preventing any abuse of the right of appropriation; that is to say, that it shall not be appropriated for any other purpose whatever than the purposes that are provided in the statute, and not appropriated for any private ends or any collateral purposes, but simply for the purpose of enabling the railroad in the pursuit of its business and the operation of its railroad to make the appropriation.

It is contended by the attorneys for the city that the finding of the court in the appropriation proceedings determines the whole character of this proposed crossing, and that no evidence may be offered for the purpose of showing the situation or condition of the grounds or the property of the railroad at this point.

It will be observed that this statute under which the probate court proceeds is an old statute, years and years prior to this statute of 1904, and with the latter statute, as we understand, the probate court has nothing to do whatever. Jurisdiction in regard to the matter of permission to cross over grade or at grade is with the court of common pleas. All and everything that the probate court has to do is to make a finding in accordance with the provisions of the statute. The finding of the jury is determined by the oath of the jury. They were sworn in this case as in others—

"You, and each of you, do solemnly swear that you will justly and impartially assess, according to your best judgment, the amount of the compensation due to the proper owners in the cases which will be brought before you in this proceeding, by reason of the appropriation of their property described in the petition, to the use of the corporation, in the proceeding now pending, irrespective of any benefit from any improvement

proposed by such corporation; and you do further swear that you will, in assessing any damages that may occur to such property owners, by reason of the appropriation, other than the compensation, further ascertain how much less valuable the remaining portion of said property will be in consequence of such appropriation."

That oath was drawn by the Legislature under previous provisions of the Constitution of the state of Ohio.

In this case the court did proceed and the jury did asses the damages under the rules laid down and fixed the amount, following to some extent the decision of the 30th O. S., 604, in regard to the crossing of railroads; at any rate the amount was fixed and assessed.

But whether that crossing should be over head or at grade is a matter with which the probate court had nothing to do, and we are unable to see how in any manner of form the judgment of the court in that respect can be binding or conclusive, at least upon this other question.

In this action, which is brought by the City of Toledo for the purpose of enjoining the railroad from crossing at grade, the city takes the affirmative and it declares that the crossing is of such a nature and character as falls within the statute which I have already read in its first, third and fourth sections, and not under the sixth section. And for the purpose of enabling this court, or any court, to ascertain in regard to the matter whether the crossing is within the sixth section or within the first section, parol evidence is perfectly competent and proper and should be resorted to for the purpose of showing the condition of the grounds, the condition of the tracks, the nature of the track which is to be laid, the purpose for which it is being laid and the points to which it is to run; in other words, to ascertain whether it falls within the sixth section of this statute or within the previous sections. We, therefore, overrule the objections that have been made, and we hold that it was competent for the railroad company to produce oral testimony, which it did, and to inform the court with regard to the character of the property of the railroad company at that point and of the objects and purposes for which the track was to be laid.

It appears that the railroad, the main branch of it, where they commence distributing cars, is on the southerly side of Swan creek, and upon the uplands at that point some cars are sent off to the connecting railroads, but that for freight purposes, the working of its freight department, the road comes down across Swan creek on to these lower lands, where the company has purchased or appropriated a large quantity of ground for the purposes of a freight yard, and it is being used for that purpose; that there were across Erie street, upon the other side, certain manufacturing establishments, gas works and other commercial establishments of that kind that they wish to reach, and also that they wish to reach the dock line at Swan creek, and that for that purpose it will be necessary for them to cross the street; that they can do this work by perhaps crossing three times during the twenty-four hours, once during the daytime and the rest of the times during the night; that is the sole expectation and purpose of the use of the crossing. In other words, that it is to increase their "yard facilities at terminal or other points" and to reach these other establishments. And we are clearly of the opinion upon the whole evidence, upon the record of the case and the maps that have been introduced, that the contention of the company is correct, and that under the statute they have the right to cross this street at grade, and that the claim and contention of the city that they have a right to interpose an injunction to prevent their doing so is not well founded in law, and for that reason the petition in the appeal case will be dismissed and the order that was rendered as set forth in the petition in error will be reversed.

*Brown, Geddes, Schmettau & Williams,* for the railroad company.

*C. S. Northup,* City Solicitor, and *John P. Manton,* Ass't City Solicitor, for the city.